# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MARK W. TETZLAFF,**
      **Appellant,**

   v.                                                  **Case No. 14-C-0767**

**EDUCATIONAL CREDIT MANAGEMENT CORPORATION,**
      **Appellee.**

---

## OPINION

Mark Tetzlaff filed for bankruptcy under Chapter 7 in February 2012 and received a discharge in January 2013. His largest creditor is Educational Credit Management Corporation ("Educational Credit"), which holds his federally guaranteed student loan. At the time Tetzlaff filed for bankruptcy, the outstanding balance on the loan was approximately $260,000.

Tetzlaff borrowed the funds at issue in this case in the course of obtaining a Masters in Business Administration and a law degree. Tetzlaff pursued these degrees from the mid-1990s until December 2005, when he graduated from law school. Since then, Tetzlaff has not held steady employment in the legal field or any other field. He has not passed a bar exam and has only been able to find temporary, intermittent work in the legal field. Prior to attending law school, Tetzlaff worked in the employee-benefits industry, as a stock broker, as an insurance salesman, and as a financial advisor. Since law school, Tetzlaff has tried to find work in some of these fields but has been unsuccessful.

Under the Bankruptcy Code, student loans are excepted from discharge unless the debtor proves that excepting the loans "would impose an undue hardship on the debtor." 11 U.S.C. § 523(a)(8). On July 19, 2012, Tetzlaff commenced an adversary proceeding against Educational Credit in which he sought to prove that excepting his loans from discharge would impose an undue hardship. Following a trial held on May 1, 2014, the bankruptcy judge entered an order in which she concluded that Tetzlaff had not met his burden of proof. Tetzlaff appeals.

In the Seventh Circuit, a debtor must prove three elements in order to establish undue hardship:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Krieger v. Educational Credit Management Corp., 713 F.3d 882, 883 (2013) (quoting In re Roberson, 999 F.2d 1132, 1135 (7th Cir.1993) (alterations in Roberson)). The bankruptcy court found that Tetzlaff proved the first element. Tetzlaff is 56 years old, is currently unemployed, and has not been steadily employed for many years. He lives with his mother, and it appears that the only source of household income is his mother's Social Security benefits. However, the bankruptcy court concluded that Tetzlaff failed to prove the second and third elements of the undue-hardship test. Essentially, the bankruptcy court concluded that Tetzlaff is capable of finding employment that will enable him to repay his loans but that instead of making good-faith efforts to secure appropriate employment, Tetzlaff has been "making excuses for failure." R. 1234.

At trial, Tetzlaff presented evidence showing that he has been trying to obtain steady employment but has been unsuccessful. He introduced evidence showing that he is a recovering alcoholic, that he has been convicted of several misdemeanor offenses, and that these convictions have hindered his ability to find a job. Tetzlaff also presented evidence from his treating psychologist who testified that he has psychological issues, including narcissistic personality disorder, anxiety, and depression. Tetzlaff attempted to introduce testimony from a forensic psychologist who would have testified that Tetzlaff has memory problems that will likely prevent him from passing a bar exam. Tetzlaff also attempted to introduce testimony from a vocational counselor who would have testified that, given Tetzlaff's memory issues, he is unlikely to find employment paying, on average, more than $15.00 to $18.00 per hour (or $31,000 to $37,000 per year). The bankruptcy court excluded the testimony of Tetzlaff's forensic psychologist and his vocational counselor on the ground that he had failed to disclose these experts by the deadline in the court's pretrial order. This left Tetzlaff with only his treating psychologist, whose opinions the bankruptcy court did not assign much weight. Instead, the bankruptcy court credited the testimony of a forensic psychologist hired by Educational Credit. That witness administered tests to Tetzlaff that were designed to determine whether he was feigning his psychological symptoms and concluded that Tetzlaff was, in fact, feigning at least some of his symptoms. Based on this testimony, the court concluded that Tetzlaff "has not tried in good faith to work up to his ability and to pay his loans." R. 1234.

The first issue on appeal is whether the bankruptcy court erred when it excluded the testimony of the debtor's forensic psychologist and vocational counselor. The bankruptcy court excluded the testimony because Tetzlaff had failed to disclose these witnesses in

3

accordance with Federal Rule of Civil Procedure 26(a)(3) by the deadline set in the court's pretrial order. The pretrial order originally set a deadline of April 12, 2013 for Tetzlaff to disclose his experts. The bankruptcy court granted Tetzlaff three extensions of this deadline, with the result that the Tetzlaff had until August 2, 2013 to disclose his experts.

According to Tetzlaff, in November 2013—after the deadline to disclose experts had passed—he failed two exams that he needed to pass in order to work in the financial industry, and this caused him to think that he might have memory problems. Tetzlaff had suspected, for two years prior to November 2013, that he might have memory problems, but he contends that failing the two exams caused him to bring up his suspicions with his physician. Tetzlaff's physician referred him to a psychologist, and this psychologist referred Tetzlaff to Robert Ver Wert, the forensic psychologist whose testimony the bankruptcy court would eventually exclude. On November 19, 2013, Ver Wert administered one memory test to Tetzlaff, and on the basis of that test he concluded that Tetzlaff had some memory issues. R. 569–71. Ver Wert opined that, based on Tetzlaff's "weak memory problems," he would "most likely never be able to pass the Bar exam." R. 571. Der Wert then advised Tetzlaff that he should see a vocational counselor to assess what impact his test results would have on his ability to perform certain types of work. R. 501.

On December 2, 2013, Tetzlaff contacted the Wisconsin Department of Workforce Development's Division of Vocational Rehabilitation ("DVR"), to be evaluated by a vocational counselor. R. 501. DVR advised him that it might be a few months before he could be seen by a counselor. On February 28, 2014, Tetzlaff again contacted DVR, and DVR told him that it might be a few more months before he could be seen. At this point,

Tetzlaff asked for referrals to private vocational counselors, and this lead him to Michael Ewens, the vocational counselor whose testimony the bankruptcy court would eventually exclude. Ewens evaluated Tetzlaff on March 27, 2014, and prepared a written report dated April 2, 2014. In that report, Ewens opined that, given the memory deficiencies identified by Ver Wert, Tetzlaff could not obtain skilled employment as an attorney or financial advisor. He further opined that Tetzlaff could only obtain employment in fields in which the average wages ranged from $15 to $18 per hour (or $31,000 to $37,000 per year). R. 580–83.

On April 10, 2014, Tetzlaff filed an "emergency" motion to allow him to disclose Ver Wert's and Ewens's reports despite the fact that the deadline to disclose experts had long passed. The court held a hearing on the motion on April 16, 2014, and denied the motion on that date. The court ruled that Ver Wert and Ewens could not offer testimony at trial. R. 671–75.

The bankruptcy court's refusal to allow Tetzlaff's belated disclosure of Ver Wert and Ewens pursuant to Rule 26(a)(3) was based on Federal Rule of Civil Procedure 16(b)(4), which provides that a deadline in a pretrial scheduling order may be modified only for "good cause." Here, the bankruptcy court determined that Tetzlaff did not have good cause for failing to disclose Ver Wert and Ewens prior to April 10, 2014. I review this determination for abuse of discretion. See, e.g., Blue v. Hartford Life & Accident Ins. Co., 698 F.3d 587, 593 (7th Cir. 2012).[1]

---

[1]The court's ruling also implicates Federal Rule of Civil Procedure 37(c)(1), which provides that when a party fails to disclose a witness in accordance with Rule 26(a), the party may not use that witness to supply evidence at trial unless the failure was substantially justified or harmless. However, in this case there is no meaningful difference

5

In making a Rule 16(b) good-cause determination, the court's primary consideration is the diligence of the party seeking amendment. Alioto v. Town of Lisbon, 651 F.3d 715, 720 (7th Cir. 2011). And here, the bankruptcy judge found that Tetzlaff had not been diligent. R. 673–74. She found that, at the latest, Tetzlaff learned of his memory issues in November 2013, when Ver Wert administered the memory test and opined that his memory issues would prevent him from passing the bar. And she found that Tetzlaff first contacted the DVR in search of a vocational counselor on December 2, 2013. R. 672–73. Yet Tetzlaff did not bring his newly discovered memory issues and his desire to hire a vocational counselor to the court's attention until April 10, 2014, which was the eve of trial, when granting Tetzlaff's motion would have required the court to adjourn the trial so that Education Credit could depose Tetzlaff's new expert witnesses and prepare a rebuttal. The judge noted that rescheduling the trial at that late date would prejudice the court, because the court could not use the time that it had set aside for the trial on other matters. R. 675. I cannot say that the bankruptcy judge abused her discretion when she concluded that Tetzlaff had not been diligent in seeking an amendment of the scheduling order or that Tetzlaff's lack of diligence had resulted in prejudice. See Perrian v. O'Grady, 958 F.2d 31, 195 (7th Cir. 1992) (holding that eleventh hour additions produce delays that burden not only the parties to the litigation but also the judicial system and other litigants).

---

between the good-cause standard of Rule 16(b)(4) and the substantially justified standard of Rule 37(c)(1). Moreover, a decision under Rule 37(c)(1), like a decision under Rule 16(b)(4), is reviewed for abuse of discretion. See, e.g., Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 514 (7th Cir. 2011). As discussed in the text, Tetzlaff's untimely disclosusre of Ven Wert and Ewens was not harmless, as it would have required the court to reschedule the trial.

Tetzlaff emphasizes that he is (and was in the bankruptcy court) proceeding pro se, and that pro se litigants are not always held to the same standards as lawyers. See, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972). However, "pro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines." Jones v. Phipps, 39 F.3d 158, 163 (7th Cir. 1994). And in this case, the bankruptcy judge gave Tetzlaff an appropriate amount of leeway before finally holding him to the deadline for disclosing expert witnesses. The judge had previously granted Tetzlaff three extensions of that deadline, and Tetzlaff's pro se status is not an excuse for his waiting until shortly before trial to request a fourth extension. Tetzlaff knew that he might want to present additional experts as early as November 2013 but did not alert the court to this fact until April 2014.

Having found that the bankruptcy court did not err in excluding Tetzlaff's additional expert witnesses, I turn to the question of whether the bankruptcy court erred when it found that Tetzlaff did not meet his burden to prove that excepting his student loans from discharge would cause an undue hardship. As noted, to prove undue hardship, Tetzlaff had to prove three elements: (1) that if he were forced to repay his loans he would be unable, based on current income and expenses, to maintain a "minimal" standard of living; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good-faith efforts to repay the loans. Krieger, 713 F.3d at 883. The bankruptcy judge found that Tetzlaff cannot maintain a minimal standard of living (element one), but that to the extent his inability to maintain a minimal standard of living is likely to persist for a significant portion of the repayment period (element two), it is because Tetzlaff

7

"has not tried in good faith to work up to his ability and to pay his loans" (element three). R. 1234. The bankruptcy judge gave significant weight to the testimony of Education Credit's forensic psychologist, who opined that although Tetzlaff has some psychological issues, Tetzlaff is a malingerer, is feigning some psychological symptoms, and is trying to look as impaired as possible. Trial Tr. 66–69, 77–78. And the bankruptcy judge found, after hearing extensive testimony from Tetzlaff himself and observing his demeanor, that "[m]ost of [Tetzlaff's] energy over the last several years has been directed at making excuses for failure—far in excess of what would be reasonable and not very convincing ones—rather than securing appropriate employment." R. 1234. In short, after hearing Tetzlaff testify about his efforts to find work and weighing the credibility of the other witnesses, the bankruptcy judge found that Tetzlaff was not trying in good faith to maximize his income and pay his loans. See Roberson, 999 F.2d at 1136 (stating that debtor's good faith is measured by "his or her efforts to obtain employment, maximize income, and minimize expenses," and that "undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from 'factors beyond his reasonable control'"). Tetzlaff has not shown that the judge's findings of fact on these matters are clearly erroneous.[2] Moreover, where as here the bankruptcy court's ultimate finding as to undue hardship does not turn on a purely legal matter, I must

---

[2]Tetzlaff points to evidence he presented at trial showing that he was trying hard to obtain employment, see Reply Br. at 14–15, but the bankruptcy court was not required to accept this evidence as proof of Tetzlaff's good faith. Rather, the bankruptcy court was entitled to credit the testimony of Education Credit's forensic psychologist, who opined that Tetzlaff was feigning psychological symptoms in an effort to avoid having to pass the bar exam and find employment. In other words, the bankruptcy court did not clearly err in accepting the psychologist's opinions and concluding that Tetzlaff's efforts to find work did not rise to the level of good faith.

review the court's finding deferentially, as I would a finding on a mixed question of law and fact. Krieger, 713 F.3d at 884. Here, I cannot upset the bankruptcy judge's finding of no undue hardship, which was reasonable given the evidence presented at trial concerning Tetzlaff's efforts to find employment. Accordingly, I must affirm the order of the bankruptcy court.

Tetzlaff argues that the bankruptcy court applied an incorrect legal standard when determining, under the second element of the undue-hardship test, that he had not shown that his inability to maintain a minimum standard of living was likely to persist for a significant portion of the repayment period. Tetzlaff argues that the bankruptcy court applied what he calls the "certainty of hopelessness" standard, a standard which he believes is unconstitutional. Tetzlaff claims that the appropriate question to ask with respect to the second element is whether it is reasonably certain that the debtor's circumstances are unlikely to improve, not whether it is absolutely certain that his circumstances will not improve. But the bankruptcy judge concluded that Tetzlaff had failed to meet even the lesser standard that he advocated for, see R. 1233–34, and thus the bankruptcy court did not, as Tetzlaff claims, apply the "certainty of hopelessness" test. In any event, it is clear from the record that the bankruptcy judge's undue-hardship decision turned on her reasonable conclusion that Tetzlaff was feigning psychological symptoms and not trying in good faith to work up to his abilities. Because the bankruptcy judge's resolution of the good-faith question must be affirmed, I could not reverse even if I thought the judge erred in applying the second element. See Goulet v. Educ. Credit Mgmt. Corp., 284 F.3d 773, 777 (7th Cir. 2002) ("If the debtor fails to establish any one of

the elements [of the undue-hardship test], the test has not been met and the court need not continue with the inquiry.").

Finally, Tetzlaff argues that the bankruptcy court erred when it determined that payments he had made to Florida Coastal School of Law did not constitute payments on a student loan. Tetzlaff raises this argument because he thinks that the bankruptcy judge based her good-faith determination on the fact that he had not made any payments at all on his student loans. Tetzlaff points out that he made late tuition payments directly to Florida Coastal in connection with his law-school education, and that these tuition payments should be characterized as payments on a student loan. But the appropriate characterization of his debt to Florida Coastal is irrelevant. The bankruptcy judge did not base her finding of lack of good faith on Tetzlaff's failure to make any payments at all on his student loans. She based her finding on the fact that Tetzlaff is a malingerer and has not tried to maximize his income. R. 1234. To be sure, the bankruptcy judge did mention during her discussion of the good-faith element that Tetzlaff had made payments to Florida Coastal but had not made payments towards the student loans at issue in this case. But it is clear from the entirety of her decision that the bankruptcy judge's finding on the good-faith element rested primarily on her conclusion that Tetzlaff was not making sufficient efforts to maximize his income. Put differently, it is clear that even if the bankruptcy judge had viewed the payments to Florida Coastal as payments on a student loan, she would have found that Tetzlaff had failed to prove good faith. And, as discussed, that finding would have been reasonable in light of the evidence presented at trial and the bankruptcy judge's opportunity to observe the witnesses and make credibility determinations.

Accordingly, **IT IS ORDERED** that the decision of the bankruptcy court is **AFFIRMED**.

Dated at Milwaukee, Wisconsin this 3rd day of December, 2014.

        s/ Lynn Adelman
        _____
        LYNN ADELMAN
        District Judge